# EXHIBIT A

# SETTLEMENT AGREEMENT

# COMPROMISE AND SETTLEMENT AGREEMENT

This *Compromise and Settlement Agreement* (the "***Settlement Agreement***" or "***Settlement***"), dated as of April 17, 2009, is entered into by and between Mortgage Lenders Network USA, on behalf of its Chapter 11 estate and binding by its terms on the Mortgage Lenders Network Liquidating Trust *("Liquidating Trust")*, as successor, under and in respect of the Settlement Agreement (collectively the ***"Debtor")*** and with respect to its case, (the ***"Chapter 11 Case")***, the Official Committee of Unsecured Creditors of the Debtor (the "***Committee***"), on the one hand, and Guiseppe Caccamo and Robie-Lyn Harnois (collectively the "***Class Representatives***"), on behalf of themselves and on behalf of the individuals named on **Exhibits B** and **C** hereto (the Class Representatives and the persons listed on **Exhibits B** and **C** hereto are collectively referred to as the "***Class Members***" or the "***Class***"), on the other hand. The Debtor the Committee and the Class Members will collectively be referred to hereafter as the "***Parties***". To the extent that certain First Amended Plan of Liquidation (as it may be technically modified, the ***"Plan")*** of Mortgage Lenders Network USA, Inc. filed December 19, 2008 in the United States Bankruptcy Court for the District of Delaware (the ***"Bankruptcy Court")*** has become effective, then all references herein to the Debtor shall be deemed to refer to the Liquidating Trust for the purpose of effectuating this Settlement Agreement, except as otherwise specified hereafter.

This Settlement Agreement is made with respect to the following recitals:

A.      The Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (**the "*Bankruptcy Code*"**) on February 5, 2007, initiating the Chapter 11 Case under Case Number 07-10146 (PJW), in the Bankruptcy Court.

B.      On or about June 4, 2007 the Class Representatives filed a class-action complaint commencing an adversary proceeding (the "***WARN Action***") against the Debtor on behalf of themselves and purportedly on behalf of the Class Members. On September 10, 2007, the Class Representatives filed an amended complaint ("**Complaint**") alleging that the Debtor violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "***WARN Act***") by ordering plant closings and/or mass layoffs on or about January 2, 2007 and thereafter, without providing sixty days advance notice thereof. The Class Representatives further asserted that, as a consequence of this alleged failure, the affected employees have an administrative expense claim pursuant to § 503(b)(1)(A) against the Debtor for damages for the alleged sixty-day violation period. The WARN Action is entitled *Guisseppe Caccamo and Robie-Lyn Harnois v. Mortgage Lenders Network USA, Inc.*, pending in the Bankruptcy Court as Adversary Proceeding No. 07-51415. The Debtor has answered the Complaint, and, has disputed all liability thereunder, including, without limitation, the characterization of any WARN damage claim in respect of the Complaint as an administrative expense claim;

C.      Some former employees of the Debtor filed individual proofs of claim in the Chapter 11 Cases based on the termination of their employment. To the extent these individual claims relate to or are based on the WARN Act or severance pay or benefits arising out of the termination of the Class Members' employment, including, but not limited to: (i) claims asserted or that could have been asserted in the WARN Action; and (ii) any other claims for severance

pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation, they are referred to herein as (the *"**Individual WARN Claims**"*). Individual WARN Claims do not include filed proofs of claim arising from or relating to unpaid wages or wage equivalents, commissions, unpaid vacation, sick leave, paid time off or any other related claims (the *"**Individual Non-WARN Claims**"*). The Debtor disputes all Individual WARN Claims and reserve their rights in full in respect of all filed Individual Non-WARN Claims.

      D.    The Parties recognize and agree that:

      1.    The question of whether the WARN claims asserted in the Complaint and the Individual WARN Claims, if allowed, would be entitled to wage priority or administrative priority treatment involves unsettled legal issues;

      2.    Voluntary and unconditional payments made by the Debtor to or on behalf of former employees would reduce any potential liability of the Debtor under the WARN Act; and

      3.    Any priority payments to former employees based on a WARN claim could convert prior payments made to or on behalf of former employees to avoidable preferential transfers.

      E.    Subject to certain exceptions, the WARN Act requires employers having 100 or more full-time employees to provide written notice of a "plant closing" (as defined by the WARN Act), if the shut-down results in an "employment loss" (as defined in the WARN Act) during any 30-day period for 50 or more employees at a single site of employment, excluding "part-time employees" (as defined in the WARN Act);

      F.    The Debtor and the Class Representatives disagree as to whether the Debtor has liability under the WARN Act and as to the proper scope of the alleged Class. In particular, the Class Representatives contend that commission only employees are entitled to WARN damages and the Debtor disputes this on the grounds that these employees could not meet their burden to establish that they would have earned any commissions had they not been terminated because these employees were disabled from originating loans by the termination of the Debtor's credit lines and various cease and desist orders rather than by their loss of employment. In addition, there are several statutory exceptions to liability under the WARN Act. For example, the Debtor has asserted that it satisfies the requirements of the "faltering company" and/or "unforeseeable business circumstances" exceptions under the WARN Act, which the Debtor further asserts can excuse notice or reduce the time such notice must be provided to the employees. The Class Representatives dispute that these defenses apply;

      G.    Even if the faltering-company or unforeseeable business circumstances exceptions to the WARN Act do not apply, the Debtor has asserted that it is nonetheless entitled to a statutorily-provided reduction of damages based on its good-faith belief that it fell under the faltering-company and/or unforeseen business circumstances exceptions or that the provisions of the WARN Act were otherwise satisfied or did not apply. The Class Representatives dispute this;

H.     There exist significant, complex legal and factual issues regarding the application of the WARN Act and the various cases and regulations interpreting the WARN Act and regarding the viability of the WARN Action. To avoid extensive, costly litigation over these issues, Debtor, the Committee and the Class Representatives, on their own behalf and on the behalf of the Class Members, through their counsel, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP *("Class Counsel")* have engaged in significant negotiations regarding a possible consensual resolution of the Individual WARN Claims, the Complaint and all related claims (collectively sometimes referred to herein as the *"WARN Act Litigation")*. In addition, Neil F. Luria, then prospective liquidating trustee for the Liquidating Trust, and a representative of a member of the Committee participated in these settlement negotiations. As a result of these negotiations, the Parties have agreed to enter into this Settlement Agreement;

I.     The WARN Act provides that attorneys fees may be awarded to the prevailing party in a WARN action;

J.     Class Counsel asserts that each of the Class Representatives (as well as 150+ other employees who directly engaged Class Counsel), in retaining the undersigned Class Counsel, have agreed to pay counsel legal fees equal to one-third of his/her recovery;

K.     The Class Representatives support the settlement of the WARN Act Litigation pursuant to the terms of this Settlement Agreement;

L.     Class Counsel asserts that a class consisting of the Class Members, because it is comprised of approximately 1600 persons, is so numerous that joinder of all members is impracticable, satisfying the numerosity requirements of Rule 23(a) of the Federal Rules of Bankruptcy Procedure as made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure;

M.     Class Counsel asserts that the issues common to the claims of the members of the Class constitute virtually all the issues affecting their rights and thus predominate over the issues that are not common;

N.     Class Counsel asserts that the claims of the Class Representatives are typical of the WARN claims of the Class in that the WARN claims of the Class Representatives arose from the same course of conduct that gave rise to the WARN claims of the Class;

O.     Class Counsel asserts that the determination of the claims of some but not all Class Members would prejudice the claims of the remaining Class Members;

P.     Class Counsel asserts that Charles A. Ercole, Esq. Of Klehr, Harrison, Harvey, Branzburg & Ellers, LLP has been appointed as class counsel in over seven WARN actions;

Q.     Class Counsel asserts that they are experienced in handling class claims under the WARN Act in bankruptcy courts, having handled at least six WARN class actions in bankruptcy court, and that Class Counsel has provided and will provide adequate representation to the Class;

R.     Class Counsel asserts that a customary fee in WARN Act class actions is one third contingency plus costs payable from the gross settlement amount;

S.     Class Counsel asserts that but for the legal services they provided, the Class Members would not have had any recovery on their WARN claims;

T.     Class Counsel asserts that they have expended substantial time in prosecuting the WARN claims of the Class Members and the legal fee provided herein is fair and reasonable under the circumstances; and

U.     The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from the Individual WARN Claims, the Complaint, and for severance pay or benefits arising out of the termination of the Class Members' employment of whatever type or nature.

NOW, THEREFORE, as material consideration and inducements to the execution of this Settlement Agreement, and in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.     This Settlement Agreement is subject to, and conditioned upon, issuance of a final order by the Bankruptcy Court approving the Settlement Agreement under Fed. R. Bankr. P. 9019, after notice and hearing to creditors and parties in interest, in accordance with applicable law and local rules. The order shall be deemed final when 11 days have elapsed from entry of the Bankruptcy Court's order approving the settlement with no notice of appeal filed or after the Bankruptcy Court order approving the settlement is finally affirmed on appeal, whichever first occurs (hereinafter "Final Order"). Upon entry of the Final Order approving the Settlement Agreement in the form attached hereto as **Exhibit A**, or in substantially similar form acceptable to the Parties, and the execution of this Settlement Agreement by the Parties, this Settlement Agreement shall be final and binding; provided, however, that in the event that the Debtor determines that the number of potential Class Members that opt-out of the Settlement Agreement is greater than fifty (50), the Debtor may, upon consultation with the Committee, elect to terminate the Settlement Agreement by providing written notice to Class Counsel within twenty (20) days after the expiration of the right of the Class Members to opt-out of the Settlement Agreement. In the event that a Final Order approving this Settlement Agreement in the form acceptable to the Parties, is not entered, or the Debtor elects to terminate this Settlement Agreement based on the number of opt-outs: (a) the Settlement Agreement and the recitals contained herein shall be without force or effect, and neither this Settlement Agreement, nor any of the statements contained herein, shall be admissible in any proceeding involving the Parties; (b) neither the motions to obtain an order approving this Settlement Agreement nor any of the pleadings filed in support of the motions shall be admissible in any proceeding involving the Parties; and (c) the Parties will use their best efforts to negotiate a mutually-acceptable amendment to the Settlement Agreement to reflect the changed circumstances presented by any opt-out elections, but no Party shall be obligated or bound to agree to such an amendment; and (d) none of the provisions hereof shall prejudice or impair any rights, remedies or defenses of any of the Parties.

2.     The *Effective Date* of this Settlement Agreement shall be the date upon which all of the following have occurred: (i) the Final Order has been entered; (ii) the Parties have

executed this Settlement Agreement; and (iii) 21 days have elapsed after the expiration of the right of the Class Members to opt-out of the Settlement Agreement and the Debtor has not elected to terminate the Settlement Agreement as a result of more than fifty (50) members of the potential Class Members opting out.

3.      Pursuant to the terms of this Settlement Agreement, and upon the Effective Date, the amount of $2,700,000, which shall include all amounts payable in this settlement and compromise, including, without limitation, attorneys' fees and costs, including the fees and costs of a mutually acceptable class action settlement administrator, (the "*Settlement Payment*") shall be paid to Class Counsel.

4.      Class Counsel shall make distributions from the Settlement Payment in the amounts required by this Settlement Agreement. Class Counsel and the Debtor shall jointly retain Rust Consulting , Inc. **("Rust")** or another mutually acceptable class action settlement administrator, to assist them in the administration of the settlement, including the distributions from the Settlement Payment to Class Members in the amounts required by this Settlement Agreement. The Debtor may establish a "Qualified Settlement Fund under 26 U.S.C. section 468B in its discretion upon consultation with the Committee to further effectuate the Settlement Agreement and the distributions to the Class Members to be made hereunder. If the Debtor elects to establish a Qualified Settlement Fund to make payments from the Common Fund (as that term is defined at paragraph 17 herein) and associated withholdings, the established and appropriate Qualified Settlement Fund procedures for making such payments shall be substituted for the procedures outlined elsewhere in this Settlement Agreement. Any employee payroll tax withholdings required by federal, state or local law shall be withheld from the distributions to the Class Members receiving payments under this Settlement Agreement and the Class Members shall be issued a Form W-2 reflecting such payment. These amounts shall include the employee portion of all applicable federal, state and local taxes, including, without limitation, Federal Insurance Contribution Act (*"FICA"*) taxes, as well as any other taxes and unemployment compensation contributions which are required to be withheld from the Class Members distributions based on the treatment of those distributions as wages. The Debtor, in consultation with Rust, or another mutually acceptable class action settlement administrator, shall determine in its sole discretion, the amount of any employee taxes that will become due and owing and shall be withheld. All such employee taxes shall revert back to the Debtor from the Settlement Payment and shall be paid promptly to the appropriate taxing authorities; provided however that if the Debtor elects to establish a Qualified Settlement Fund which pays such taxes directly, it will not be necessary for such taxes to revert back to the Debtor. The Debtor or the Qualified Settlement Fund, shall be responsible for the reporting of same, as well as the provision of Forms W-2 and other required tax reporting forms. It is contemplated that Rust will act as the agent of the Debtor/Liquidating Trustee or the Qualified Settlement Fund with respect to determining required withholdings, fulfilling reporting requirements, including federal and state payroll tax returns, the issuance of Forms W-2 and other required federal and state tax forms, and related matters. Upon the date the Plan becomes effective and the Liquidating Trust is created, the Liquidating Trust, acting by its Liquidating Trustee, shall in turn act as the Debtor's agent in all matters specified above in this paragraph 4 in order to effectuate this Settlement Agreement. For the purpose of calculating applicable taxes, the Parties agree that 100% of the amounts to be paid to the Class Members, after deducting attorneys' fees and costs, but before deducting applicable taxes, shall constitute wages reportable on IRS Form W-2. For avoidance of doubt, the Parties

agree that the amount subject to applicable taxes on wages is $1,612,500. The Debtor or the Qualified Settlement Fund shall be responsible for paying the employer portion of the of FICA taxes and required federal and state unemployment taxes. These amounts are estimated to be between 12.5% and 13.5% of $1,612,500. To assist the Debtor or Qualified Settlement Fund in making these payments, Class Counsel shall make a distribution to the Debtor or Qualified Settlement Fund, as appropriate, from the Settlement Payment in the amount of $107,500 within 5 days of receiving a request for such payment from the Debtor. In the event the employer portion of FICA taxes and federal and state unemployment taxes are less than $215,000, the Debtor shall pay to Class Counsel 50% of the difference between the actual amount of such taxes and $215,000. Class Counsel, may distribute such amount to the Class Members *pro rata* based on the amounts distributed under paragraphs 19 and 20 herein, or, if the amounts are de minimis, disburse the funds to The Impact Fund, a non-profit organization dedicated to employee rights.

5.      Class Counsel shall bear the ultimate responsibility for the production and mailing of all notices to be required for the Class Members (the "*Class Notices*") but may engage Rust or another mutually acceptable administrator as its agent for such purposes. The address of Class Counsel will be used as the return address for the Class Notices and checks mailed to the Class Members.

6.      Class Counsel's address will be used as the return address for the Class Notices so that any returned Class Notices will be returned to Class Counsel. Class Counsel shall mail the Class Notices by first class mail to Class Members at the addresses listed on **Exhibits B and C** hereto no later than 10 business days after preliminary approval of this Settlement by the Bankruptcy Court. The Class Notice shall be in substantially the form annexed hereto as **Exhibit D** or such substantially similar form as may be approved by the Bankruptcy Court. The Class Notice shall contain the following information, which shall be individualized for each Class Member:

(a)      That each Class Member has the right to opt out of the Class and preserve all of her/his rights against the Debtor, if any (all such opting out Class Members, the "*Opt-Outs*");

(b)      The last date such Class Member was paid, the office location to which the Class Member was assigned as of the date of his/her termination, and the Class Member's annual salary or year to date income at the time of termination, depending on whether the Class Member was a salaried or hourly employee;

(c)      That the Settlement Agreement shall become effective only if it is finally approved by the Bankruptcy Court;

(d)      That the Settlement Agreement shall be effective as to all Class Members who do not opt-out of the Class; however, if the Bankruptcy Court does not approve the Settlement Agreement, or if more than 50 of the Class Members opt-out and the Debtor exercises its option to withdraw from the Settlement Agreement, the Settlement Agreement shall not become effective;

(e) The projected dollar amount such Class Member would receive under this Settlement Agreement, prior to any deduction for applicable taxes, before attorneys' fees and costs as well as an estimate of such payment after attorneys' fees and costs are deducted;

(f) That such Class Member has the right to object to this Settlement Agreement, to retain counsel and be heard at the Fairness Hearing;

(g) That all released Claims (as that term is defined in section 21 herein) of a Class Member shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

7. The Debtor represents that to the best of its knowledge, information and belief, the information contained in **Exhibits B and C** hereto accurately reflects the contents of the Debtor's books and records as to each Class Member, as follows: (i) the last known mailing address at the time of termination (unless the employee has provided a change of address to the Debtor); (ii) the annual salary or wages at the time of termination of each Class Member; and (iii) the date of termination of the Class Member's employment.

8. A Class Member may object to this Settlement Agreement by sending timely written notice of such objection (a "Notice of Objection") to (a) Class Counsel, attn: Charles Ercole, Esq., Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, 260 S. Broad Street Philadelphia, PA 19102-5003; (b) the Debtor's counsel, attn.: Kenneth H. Brown, Esq., Pachulski, Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111; (c) Counsel for the Liquidating Trust and the Committee, attn.: Michael B. Schaedle, Esq., Blank Rome, LLP, One Logan Square, 130 North 18th St., Philadelphia, PA 19103-6998 and filing such Notice of Objection with the Bankruptcy Court so that it is received by all of the above no later than ten days prior to the date fixed by the Bankruptcy Court for the Final Fairness Hearing. Such objection shall clearly specify the relief sought and the grounds for such relief.

9. Any Class Member may opt-out of the Class by mailing to Class Counsel, at the address noted above, the completed and executed Opt-Out Notice Form, attached to the Class Notice as **Exhibit D** hereto (and which shall be attached to the Class Notice) so that it is received by Class Counsel no later than fifteen days prior to the date fixed by the Bankruptcy Court for the Final Fairness Hearing. Upon the receipt of such timely notice by Class Counsel, such Class Member shall be classified as an Opt-Out. Within three days of the expiration of the last day to opt-out, Class Counsel shall provide to counsel for the, the Debtor and the Committee a list of the Class Members who have timely returned an Opt-Out Notice Form.

10. If a Class Member does not wish to be bound by this Settlement Agreement, such Class Member must timely opt-out of the Class by returning a completed and executed Opt-Out Notice Form as described in the paragraph above. Otherwise, if and when the Settlement Agreement becomes effective, all Class Members who have not opted out shall be bound by the terms of this Settlement Agreement.

11.     Notwithstanding anything to the contrary in this Settlement Agreement, nothing contained herein shall release or impair the rights and claims, if any, of the Opt-Outs, nor shall anything contained herein affect the defenses and offsets that the Debtor, the Debtor's estate, its respective subsidiaries, affiliates, successors or any of its present or former officers, directors, employees, agents, lawyers, consultants, stockholders or members of any thereof, may have against any such rights or claims.

12.     *RESERVED*

13.     Class Counsel is hereby recognized as class counsel for the Class Members, in pursuing claims against Debtor for violations of the WARN Act and in settling such claims and any other claims of the Class Members for severance pay or benefits, and is entitled to attorneys' fees in the amount of $900,000, based on 33⅓ of the Settlement Payment. In addition, Class Counsel shall be entitled to $25,000 from the Settlement Payment for out of pocket costs and expenses. An additional $50,000 from the Settlement Payment shall be held in trust by Class Counsel and shall be used first to pay the fees and costs of Rust, or another mutually acceptable class action settlement and settlement fund administrator, to perform the obligations of the Parties and the Qualified Settlement Fund set forth at paragraphs 4, 5 and 6 herein. Any portion of the $50,000 remaining after full payment of Rust, or another mutually acceptable class action administrator, shall be retained by Class Counsel on account of its out of pocket costs. The payment to Class Counsel of $900,000 in fees, $25,000 in costs and the portion of the $50,000 remaining after paying Rust, or another mutually acceptable class action settlement and settlement fund administrator, for administering the settlement and settlement fund on behalf of the Parties, shall constitute payment in full for Class Counsel's work on behalf of the Class Members. Class Counsel may deduct from the Settlement Payment the attorneys' fees of $900,000 pursuant to this Settlement Agreement and $75,000 for out of pocket costs and expenses of Class Counsel and the fees and expenses of the class action settlement administrator, prior to the distribution of funds from the Settlement Payment to the Class Members. The attorneys' fees and costs paid to Class Counsel, shall, upon approval by order of the Bankruptcy Court, supersede any contingency fee agreements any of the Class Members have with Class Counsel.

14.     The Class Representatives are hereby recognized as the class representatives and shall each receive a one-time payment of $2,500 for the services they provided to the Class in connection with the prosecution of the WARN Action (the "*Service Payment*") which amounts shall be paid from the Settlement Payment. No attorney fees will be deducted from the Service Payment. Class Counsel shall distribute the Service Payment to the Class Representatives in addition to their individualized payments from the Settlement Payment described below. The Service Payment does not reduce any bankruptcy priority otherwise payable to the Class Representatives and is a transfer on behalf of and deemed from the Class to the Class Representatives and not from the, the Debtor, its Chapter 11 estate or the Debtor. Each Class Representative shall receive an IRS 1099 Form for this portion of their distribution.

15.     The Class Members, including the Class Representatives, are listed on **Exhibits B** and **C** attached hereto. The Debtor believes that the Class Members include all of the employees of the Debtor that were terminated without cause after December 1, 2006 who are alleged to be "affected" employees, by reason of the purported plant closing or mass layoff that allegedly took

place on or about January 2, 2007 and thereafter, and include all of the Debtor's employees terminated in connection therewith other than employees who are not entitled to participate in this Settlement Agreement because (i) they voluntarily resigned from their employment with the Debtor or were terminated for cause or good reason; or (ii) they released the Debtor from any and all claims arising out of their employment; (collectively, the "Ineligible Employees"). In addition, Paul Impagliazzo shall not be a member of the Class because the Debtor believes the Debtor's estate has claims against him that offset any alleged damages he may have against the estate for any alleged failure to give notice under the WARN Act.

16. **Exhibit B** lists all of the employees of the Debtor, who were paid a salary or on an hourly basis and were terminated without cause after December 1, 2006, other than Ineligible Employees. **Exhibit C** lists all of Debtor's employees, who were compensated on a commission only basis and were terminated without cause after December 1, 2006. Upon execution of this Settlement Agreement, the Parties consent that a class shall be certified in connection with the WARN Act Litigation and the motion to approve this Settlement Agreement, consisting of the individuals listed on **Exhibits B** and **C**; provided however that such class shall be certified for settlement purposes only pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure as made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure.

17. Upon the Effective Date, the Settlement Payment shall be made in a lump sum of $2,700,000 to Class Counsel and deposited into a trust settlement account established by Class Counsel. The gross amount to be distributed to Class Members, after payment of $5,000 in Service Payments to the Class Representatives, payment of attorneys' fees and costs in the amount of $975,000 to Class Counsel and the class action settlement administrator, and the payment of $107,500 (the *"Subject Payments"*) to the Debtor to assist the Debtor or any Qualified Settlement Fund with the payment of the employer portion of FICA taxes and federal and state unemployment taxes, is $1,612,500 (the *"Common Fund"*). The Common Fund (which also refer to any Qualified Settlement Fund if elected), less applicable taxes, shall be allocated to each eligible Class Member, as follows:

(i) The Class Members (including the Class Representatives) listed on **Exhibit B** hereto shall receive distributions in the amounts set forth on **Exhibit B** hereto.

(ii) The Class Members listed on **Exhibit C** hereto shall receive distributions in the amounts set forth on **Exhibit C** hereto.

If the Court reduces the amount of attorneys' fees to be paid to Class Counsel under this Agreement, the residual amount will be distributed to the Class Members in a proportionate amount as reflected in their pro rata share under Exhibits B and C.

18. Other than the Service Payment, all amounts distributed to Class Members hereunder are distributions on account of unsecured, priority claims (and not claims for payment of administrative expense). Further, all amounts distributed to Class Members hereunder are inclusive of each such Member's *pro rata* share of attorneys' fee and cost recovery claims and rights.

19.     The total amount to be distributed to the Class Members listed on **Exhibit B** ("BMembers") is $1,317,464 less applicable taxes, which represents approximately 81% of the Common Fund. The amounts to be paid to each BMember is derived by allocating the $1,317,464 pro rata to each BMember based on the maximum amount of the BMember's WARN claim which was derived by calculating each Class Members' WARN daily rate (which was determined by dividing each hourly/Salaried employee's annual wages by 260) then multiplying each employees daily rate by 60. Specifically, without limitation, these amounts, received by the BMembers, before any deduction or withholding for federal, state or local taxes, will be deducted from and shall automatically reduce the priority portion of each allowed BMember's allowed Individual Non-WARN Claim, if any, on a dollar-for-dollar basis, pursuant to this Settlement Agreement, without further order of the Bankruptcy Court, provided, however, that the Debtor reserves any and all rights to object to each BMember's Individual Non-WARN Claim, if any, on any and all grounds. For example, if a BMember has an allowed Individual Non-WARN Claim in the amount of $10,000 as a priority unsecured claim, and the amount to be received hereunder, after the deduction of such BMember's ratable share of attorneys' fees and costs paid to Class Counsel under this Settlement Agreement totals $2,000, then the Individual Non-WARN Claim will be reduced by $2,000 for a total remaining claim of $8,000 subject to the Debtor's right to object to such remaining claim. For avoidance of doubt, if the BMember's allowed Individual Non-WARN Claim, plus the allowed Individual WARN Claim exceeds $10,000, then such excess amount shall be treated as a non-priority unsecured claim.

20.     The total amount to be distributed to the Class Members listed on **Exhibit "C"** ("CMembers") is $295,036, less applicable taxes, which represents approximately 19% of the Common Fund. The amounts to be paid to each CMember is derived by imputing a daily rate for each CMember based on the federal minimum wage of $5.15 per hour multiplied by 8 hours and adding a daily benefit of $13. That total daily rate of $41.20 was then multiplied by 60 for each CMember. The total was then multiplied by 50%. Therefore, each CMember listed on Exhibit C shall receive the amount of $973 after the deduction of the Subject Payments, less applicable taxes. Specifically, without limitation, the amount of $973 (the amount to be received by each CMember after the deduction for the of each CMembers pro rata portion of the Subject Payments, but before any deduction or withholding for federal, state or local taxes) will be deducted from and shall automatically reduce the priority portion of each CMember's allowed Individual Non-WARN Claim, if any, on a dollar for dollar basis, pursuant to this Settlement Agreement, without further order of the Bankruptcy Court, provided however, that the Debtor reserves any and all rights to object to each CMember's Individual Non-WARN Claim, if any, on any and all grounds. For example, if a CMember has an individual Non-WARN Claim in the amount of $10,000 as a priority unsecured claim, then it will be reduced by $973 for a total priority amount of $9,027 remaining. For avoidance of doubt, if the CMember's allowed Individual Non-WARN Claim, plus the amount of $973 exceeds $10,000, such amount shall be treated as a non-priority unsecured claim.

21.     If settlement checks issued to Class Members remain uncashed as of the 241st day after the initial distribution (the "Residual Funds"), such funds shall be disbursed to The Impact Fund, a non-profit organization dedicated to employee rights. No portion of the Residual Funds will revert to the Debtor for any reason, or be retained by Class Counsel.

22.     Except for the rights arising out of, provided for, or reserved in this Settlement Agreement, upon the payment of the Settlement Payment to Class Counsel, the Class Members (except for any Class Members who have opted out of this Agreement), for and on behalf of themselves, and their respective successors and assigns (collectively, the "***Releasing Parties***"), do hereby fully and forever release and discharge the Debtor, the Debtor, the Debtor's estate, their current and former parents, liquidating trustee, subsidiary and affiliated entities, and their respective officers, directors, shareholders, agents, employees, partners, members, accountants, attorneys, representatives and other agents, and all of their respective predecessors, successors and assigns (collectively, the "***Released Parties***"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Releasing Parties may now have or hereafter may have against the Released Parties, which relate to or are based on the WARN Act or back or severance pay or benefits under any federal, state or local law or regulation arising out of the termination of the Class Members' employment by the Debtor, including, but not limited to: (i) all claims asserted or that could have been asserted in the WARN Act Litigation; (ii) the Individual WARN Claims; and (iii) any other claims for back or severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation; provided, however, that the following claims and/or rights shall not be released: (a) any claims for continuation of health or medical coverage, at the Class Member's expense, or at the expense of a beneficiary or dependant of a Class Member, to the extent allegedly required by the relevant provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("***COBRA***"); (b) any claims for expense reimbursement; unpaid wages or commission unrelated to the WARN Act; (c) any prepetition claims arising out of obligations of the Debtor unrelated to the WARN Act Litigation, the WARN Act, or back or severance pay or benefits; (d) rights, if any, unrelated to Class Members' WARN claims, under the Debtor's 401(k) plans; and (e) any claims which the law clearly states may not be released by settlement. The claims released hereunder are referred to herein as the "Claims". The Released Parties expressly reserve the right to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed hereunder.

23.     Upon the payment of the Settlement Payment to Class Counsel, the Class Members agree that any claims that have been scheduled on behalf of, or filed by, the Class Representatives or the Class Members in the Chapter 11 Case, on account of any alleged violation of the WARN Act or severance pay or benefits under any federal, state or local law or regulation, including, without limitation, the Individual WARN Claims are disallowed in their entirety and may be expunged from the Debtor's schedules or claims register, as appropriate, in the Debtor's discretion.

24.     The Releasing Parties and Class Counsel acknowledge that they are familiar with, and/or, in the case of the Class Members, have been informed by the notice to the Class of the provisions of California Civil Code § 1542, which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

With respect to the Claims being released hereunder, the Releasing Parties waive and relinquish, to the fullest extent that the law permits, the provisions, rights, and benefits of California Civil Code § 1542 and other statutes, regulations or common law principles of similar effect. Such release, however, shall not release the Debtor's obligations under this Settlement Agreement. The Releasing Parties hereby agree and acknowledge that this waiver and relinquishment is an essential term of this Settlement Agreement, without which the consideration provided to them would not have been given. In connection with such waiver and relinquishment, the Releasing Parties and Class Counsel acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to the matters released herein. Nevertheless, it is the intent of the Releasing Parties and Class Counsel in executing this Settlement Agreement fully, finally, and forever to settle and release all such matters, and all claims relative thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action or proceeding) which are the subject of the releases granted hereunder.

25.     Approval of this Settlement Agreement by the Bankruptcy Court and payment of the Settlement Payment to Class Counsel, shall operate as a full release of the Released Parties by the Releasing Parties, including each Class Representative and each Class Member of all Claims. Upon entry of the Final Order and payment of the Settlement Payment to Class Counsel, all Claims are deemed settled, released and dismissed in their entirety, on the merits, with prejudice.

26.     If the Settlement Agreement does not become fully enforceable by the Parties, then the provisions of this Settlement Agreement shall be null and void and the Debtor, the Committee, or any other party-in-interest shall be free to object to and/or defend against the Individual WARN Claims and the claims asserted in the Complaint or any other claims asserted by the Class Members. Execution of this Settlement Agreement by the Debtor and the Committee does not waive any defense or objection to any claims asserted or that may be asserted by the Class Members.

27.     The Debtor, the Committee and Class Counsel shall cooperate to cause a joint motion to be filed with the Bankruptcy Court for an order approving this Settlement Agreement ("*Settlement Motion*"). The Debtor shall give notice to parties in interest other than Class Members.

28.     If any Class Member, including any Class Representative, timely and properly elects to opt-out of the proposed Class, that Class Member's rights and obligations will be unaffected by this Settlement Agreement and that Class Member will have the same rights and obligations as he or she would have had if the Complaint had never been filed and this Settlement Agreement had never been executed. Any Class Member that elects to opt-out shall not have an allowed claim against the Debtor by reason of this Settlement Agreement and shall retain his or her rights against the Debtor, if any. The Debtor and the Committee reserve all rights against any Class Member that opts-out. In such event, the Settlement Payment shall be reduced by such opting-out Class Members' share of the Common Fund as shown on **Exhibits B and C.**

29.     A dismissal with prejudice of the WARN Action shall be executed in a form agreeable to the Parties (the **"Dismissal"**). Class Counsel shall file the Dismissal with the Bankruptcy Court upon the entry of the Final Order. Dismissal of the WARN Action shall not abate or limit the effectiveness of the Final Order, including the releases set forth herein and the terms and conditions of this Settlement Agreement. The parties agree that the Bankruptcy Court shall retain jurisdiction to enforce the terms and conditions of this Settlement Agreement.

30.     Class Counsel agrees that it will not, directly or indirectly, commence any litigation or assert any claims on behalf of any former employees of the Debtor who opt-out of the Settlement Agreement.

31.     The Parties agree that they are compromising and settling disputed claims. Other than as set forth herein, each of the Parties shall bear its own attorney's fees, expenses and court costs. Each of the Parties agrees it shall not commence or continue any contested matter, adversary proceeding, lawsuit, or arbitration which contests, disputes, or is inconsistent with any provision of this Settlement Agreement.

32.     Neither this Settlement Agreement nor any of its provisions, nor evidence of any negotiations or proceedings related to this Settlement Agreement, shall be offered or received in evidence in the Chapter 11 Case, or any other action or proceeding, as an admission or concession of liability or wrongdoing of any nature on the part of any of the Released Parties, or anyone acting on their behalf, and the Debtor specifically denies any such liability or wrongdoing. Nothing herein shall prevent any Party from seeking to offer this Settlement Agreement in evidence after the entry of the Final Order approving the Settlement Agreement by the Bankruptcy Court for the purpose of enforcing the terms of the Settlement Agreement.

33.     This Settlement Agreement shall be binding upon and shall inure to the benefit of the predecessors, successors and assigns of each of the Parties to the fullest extent under the law.

34.     This Settlement Agreement shall be construed pursuant to the laws of the State of Delaware and the United States Bankruptcy Code.

35.     This Settlement Agreement and the Exhibits hereto represent the entire agreement and understanding between the Parties as to the subject matter hereof and supersede all previous agreements and discussions between the Parties as to the matters herein addressed. This Settlement Agreement can be amended or modified only in writing and signed by all the Parties hereto, subject to any necessary Bankruptcy Court or other approval.

36.     This Settlement Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one agreement. This Settlement Agreement may be executed by facsimile, or PDF and such facsimile or PDF signature shall be treated as an original signature hereunder.

37.     This Settlement Agreement has been prepared by the joint efforts of the respective attorneys for each of the Parties. Each and every provision of this Settlement Agreement shall be construed as though each and every party hereto participated equally in the drafting hereof. As a result of the foregoing, any rule that the document is to be construed against the drafting party shall not be applicable.

38.     This Settlement Agreement is subject to and contingent upon the approval by the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to determine as a core proceeding any dispute or controversy with respect to the interpretation or enforcement of this Settlement Agreement.

39.     The Parties may not waive any provision of this Settlement Agreement except by a written agreement that all of the Parties have signed. A waiver of any provision of this Settlement Agreement will not constitute a waiver of any other provision. The Parties may modify or amend this Settlement Agreement only by a written agreement that all of the Parties have signed.

40.     This Settlement Agreement is intended to settle and dispose of claims which are contested and denied. Nothing herein shall be construed as an admission by any Party of any liability of any kind to any other Party.

[signature page to follow]

Date: _____, 2009

KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, LLP
ON BEHALF OF THE CLASS REPRESENTATIVES
AND THE CLASS MEMBERS

By:     _____
        Charles Ercole,  Esq.
        Class Counsel

PACHULSKI STANG ZIEHL & JONES LLP
ON BEHALF OF THE DEBTOR

By:     _____
        Kenneth H. Brown, Esq.
        Debtor's Counsel

BLANK ROME, LLP
ON BEHALF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:     _____
        Michael B. Schaedle, Esq.,
        Counsel for the Official Committee of Unsecured Creditors of the Debtors

# EXHIBIT A

# TO SETTLEMENT AGREEMENT

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MORTGAGE LENDERS NETWORK USA, INC.,[1] | Case No. 07-10146 (PJW) |
| Debtor. | |
| GUISEPPE CACCAMO and ROBIE-LYN HARNOIS | Adversary Case No. 07-51415 (PJW) |
| Plaintiffs, | |
| v. | |
| MORTGAGE LENDERS NETWORK USA, INC., | |
| Defendant. | |

**Objection Deadline:  [Date]**
**Hearing Date:  [Date]**

### FINAL ORDER APPROVING SETTLEMENT BETWEEN THE DEBTORS, CERBERUS CAPITAL MANAGEMENT, L.P., THE COMMITTEE AND THE WARN CLASS PLAINTIFFS

The Court has considered the joint motion dated [      ] of the above-captioned

debtor and debtor in possession ("Debtor"), the Official Committee of Unsecured Creditors of

the Debtor ("the Committee") and the WARN Class Plaintiffs for an order approving the

proposed Compromise and Settlement Agreement (the "Settlement Agreement")[2] settling

WARN Act class claims and certain other claims (the "Joint Motion"). The Court finds:

A.      The Court has entered an Order on [          ] granting preliminary

approval of the Settlement Agreement and approving the form and manner of notice of the

---

[1] Debtor's EIN: XX-XXX7394. Debtor's Address:  Middlesex Corporate Center, 213 Court Street, 11th Floor, Middletown, CT  06457
[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Joint Motion or Settlement Agreement, as appropriate.

Settlement Agreement and the deadline for opting-out and objections to be given to all Class Members;

        B.      Due notice has been given to the Class of the proposed Settlement Agreement, the right to opt-out of the Class, the right to object to the proposed Settlement Agreement and the right to appear in person or by counsel at the fairness hearing; and no other and further notice is required and such notice is deemed proper and sufficient under the circumstances;

        C.      The Court has held a fairness hearing on [      ] to consider final approval of the Settlement Agreement;

        D.      All Class Members who did not exercise the right to opt-out of the Class are bound by this Order and the terms of the Settlement Agreement;

        E.      The terms of the Settlement Agreement are fair, reasonable and adequate under Federal Rule of Civil Procedure 23 incorporated by Rule 7023 of the Federal Rules of Bankruptcy Procedure and the nine factor test the Third Circuit developed in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

        F.      The Settlement Agreement was negotiated at arms length and in good faith, is fair equitable and in the best interests of the Debtors' estates;

        G.      Other good and sufficient cause exists for granting the relief requested in the Joint Motion.

        IT IS HEREBY ORDERED THAT:

1.     The Settlement Agreement, attached hereto as **Exhibit 1**, is APPROVED

as fair and reasonable. The parties are authorized to implement its terms.

2.     Effective upon the payment of the Settlement Payment to Class Counsel,

any and all claims that have been scheduled on behalf of, or filed by, the Class or the Class

Members who have not opted out of the Settlement Agreement in these chapter 11 cases, for any

alleged failure to provide adequate notice under the WARN Act or related to severance or

benefits arising out of the termination of their employment with the Debtors, whether based on

the WARN Act or any other federal, state or local law, regulation or ordinance, including,

without limitation, the Individual WARN Claims, are disallowed and expunged in their entirety.

3.     Upon the payment of the Settlement Payment to Class Counsel, this Order

shall operate as a full and final release and discharge, by all members of the Class, that do not

opt-out of the Settlement Agreement, for and on behalf of themselves, and their respective

predecessors, successors assigns, (collectively, the "Releasing Parties"), of the Debtor, the

Debtor's estates, its current and former parents, liquidating trustee, subsidiary and affiliated

entities, and their respective officers, directors, shareholders, agents, employees, partners,

members, accountants, attorneys, representatives and other agents, and all of their respective

predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and

all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs,

expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and

otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Releasing

Parties may now have or hereafter may have against the Released Parties, which relate to or are

based on the WARN Act or severance pay or benefits arising out of the termination of the employment of the Class or the Class Members by the Debtor, including, but not limited to: (i) all claims asserted or that could have been asserted in the Individual WARN Claims, pursuant to the WARN Act and the Complaint in the WARN Action; and (ii) any other claims for severance pay or benefits arising out of their termination based on or arising out of any federal, state or local statute, ordinance or regulation; provided, however, that the following claims and/or rights of the Class or Class Members shall not be released by this Order: (a) any claims for continuation of health or medical coverage, at the Class Members expense, or at the expense of a beneficiary or dependant of a Class Member, to the extent required by the relevant provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); (b) any claims for expense reimbursement; (c) any prepetition claims arising out of obligations of the Debtors unrelated to the WARN Act Litigation, the WARN Act, or severance pay or benefits; (d) rights if any, unrelated to the Class Members WARN claims, under the Debtors' 401(k) plans; and (e) any claims which the law clearly states may not be released by settlement. The claims released hereunder are referred to hereafter as the "Claims." All rights of the Debtor and the Committee to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed under the Agreement, are expressly reserved.

4.     The payment of attorneys' fees and costs to Class Counsel as set forth in the Settlement Agreement and the payment of fees and costs to Class Counsel shall be made pursuant to the terms of the Settlement Agreement and this order.

5.     Effective upon payment of the Settlement Payment, the Adversary

Proceeding *styled Guisseppe Caccamo and Robie-Lyn Harnois v. Mortgage Lenders Network*

*USA, Inc.*, which is presently pending in the Bankruptcy Court as Adversary Proceeding No. 07-

51415 (BLS) ("WARN Action"), is deemed dismissed with prejudice.

6.     Nothing in this Order, the Settlement Agreement or any of the pleadings

and papers filed in support of the approval of the Settlement Agreement constitute a waiver of

any right of the Debtor, its estate or its successors or assigns, to assert against the persons listed

on Exhibits B and C to the Settlement Agreement any claims, counterclaims, rights of offset or

recoupment, preference actions, fraudulent-transfer actions, or any other bankruptcy or

nonbankruptcy claims.

7.     This Court shall retain jurisdiction, even after the closing of these chapter

11 cases, with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2009

_____

UNITED STATES BANKRUPTCY JUDGE